IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HOTEL EMPLOYEES and RESTAURANT | ) | |
| EMPLOYEES INTERNATIONAL UNION | ) | |
| PENSION FUND, and H.W. WARD, fiduciary | ) | |
| of Hotel Employees and Restaurant Employees | ) | |
| International Union Pension Fund | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05 C 4659 |
| | ) | |
| 520 SOUTH MICHIGAN AVENUE, d/b/a/, | ) | |
| THE CONGRESS PLAZA HOTEL AND | ) | |
| CONVENTION CENTER | ) | |

MEMORANDUM OPINION AND ORDER REGARDING
PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

JAMES F. HOLDERMAN, District Judge:

On August 15, 2005, plaintiffs Hotel Employees and Restaurant Employees International Union Pension Fund and H.W. Ward, fiduciary of the pension fund, (collectively "the Pension Fund") filed a complaint against defendant 520 South Michigan Avenue Associates, Ltd, which does business as The Congress Plaza Hotel and Convention Center ("Congress Plaza"). In the complaint, the Pension Fund seeks to vacate an impartial arbitrator's decision to not assess Congress Plaza withdrawal liability pursuant to the Employment Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 et seq. (Dkt. No. 1). Before this court are cross-motions for summary judgment (Dkt Nos. 24, 30). For the reasons stated below, this court grants summary judgment in favor of the defendant and denies the plaintiffs' motion for summary judgment.

1

BACKGROUND

A.     MPPAA

Under the law, an employer is considered to have completely withdrawn from a multiemployer pension plan when an employer permanently ceases to have an obligation to contribute under the plan or permanently ceases all covered operations under the plan.  29 U.S.C. § 1383.  When an employer completely withdraws from a pension plan, the pension fund may assess the employer's withdrawal liability.  29 U.S.C. § 1381(a); *see Transpersonnel, Inc. v. Roadway Express, Inc.*, 422 F.3d 456, 459 (7th Cir. 2005).  In imposing withdrawal liability on withdrawing employers, Congress meant to ensure that withdrawing employers would not leave a plan with vested pension obligations that were only partially funded.  *Cent. States, SE and SW Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1014 (7th Cir. 2001).  An employer may challenge the pension fund's assessment of withdrawal liability first by asking the plan to review its assessment and then arbitration, 29 U.S.C. §§1399(b)(2), 1401(a)(1), but the employer must pay the assessed amounts in accordance with the payment schedule while it is disputing liability.  *Bomar Nat'l*, 253 F.3d at 1015.  Congress has statutorily exempted from withdrawal liability those employers who withdraw solely because the employers are suspending contributions under the plan during a labor dispute involving its employees.  29 U.S.C. § 1398(2).  The labor dispute exception prevented unions from using withdrawal liability as a weapon during negotiations over collective bargaining agreements.  *See Cent. States, SE and SW Areas Pension Fun v. McNicholas Trans. Co.*, No. 89 C 5229, 1991 WL 341021, at *9 (N.D. Ill. Dec. 26, 1991).

B.     Factual Background

At issue in this case is whether the arbitrator correctly determined that the labor dispute exception exempts Congress Plaza from paying withdrawal liability or, alternatively, that the withdrawal was not permanent. The material facts are undisputed. Pursuant to a collective bargaining agreement ("CBA") between Congress Plaza, an employer under ERISA, and the Hotel Employees and Restaurant Employees International Union, Local 1, AFL-CIO ("Local 1"), Congress Plaza was obligated to pay monthly contributions to the Pension Fund. The CBA bound Congress Plaza to a trust agreement with the trustees of the Pension Fund. That CBA expired on December 31, 2002, but Congress Plaza continued to pay monthly contributions to the Pension Fund while it negotiated a new CBA with Local 1. Some members of Local 1 went on strike as of June 2003 (and some members remain on strike). After the strike was initiated in June 2003, Congress Plaza continued to make contributions to the Pension Fund on behalf of the members of Local 1 who chose not to strike. Congress Plaza also continued (and still continues) to negotiate a renewed CBA with Local 1 to no avail. The Pension Fund, in § 9.04 of the trust agreement, states that it will accept contributions after a CBA has expired until the earlier of either the acceptance of a renewal agreement or the end of a 12-month period following the expiration of the CBA, referred to as the "One-Year Resolution" by the Pension Fund. (Pl.'s L.R. 56.1 Ex. 4 § 9.04.) The trust agreement also requires that the trustees carry out their duties consistently with ERISA, MPPAA, and other applicable law. (*Id.* § 6.06). The trustees have discretion to continue accepting contributions from the employer after the expiration of the 12-month period, and in the past have done so with other employers.

In December 2003, the Pension Fund sent Congress Plaza a notice that the Pension Fund would not accept contributions from Congress Plaza if no renewal agreement had been received

3

by December 31, 2003, the end of the 12-month period. After the Pension Fund did not receive a renewal agreement by December 31, 2003, the Pension Fund terminated Congress Plaza's participation in the fund and assessed it withdrawal liability in the amount $2,670,763.43 on January 16, 2004.

Congress Plaza timely requested review of the assessment of withdrawal liability and then challenged the Pension Fund's assessment in arbitration, arguing that it was exempt from withdrawal liability because it was engaged in a labor dispute and any liability was temporary. The arbitrator agreed with Congress Plaza and rescinded the Pension Fund's assessment of withdrawal liability, ordering the Pension Fund to refund Congress Plaza its interim payments in a lump sum with appropriate interest. Now, the Pension Fund challenges the arbitrator's decision, contending that Congress Plaza waived the labor dispute exception when it agreed to the One-Year Resolution term in the trust agreement. Moreover, the Pension Fund takes issue with the arbitrator over his decision that, alternatively, the Pension Fund's characterization of the withdrawal as permanent was unreasonable.

## LEGAL STANDARDS

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, this court takes all facts and inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a

4

genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003). Finally, the evidence relied upon must be competent evidence of a type otherwise admissible at trial. *Stinnett v. Iron Work Gym/Exercise Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

There is a presumption, rebuttable "only by a clear preponderance of the evidence," that the factual findings of the arbitrator are correct. 29 U.S.C. § 1401(c). This standard has been interpreted to mean that courts will only set aside an arbitrator's findings of fact and application of law to facts if clearly erroneous. *Cent. States, SE and SW Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 804 (7th Cir. 1999); *Schlitz Brewing Co. v. Milwaukee Brewery Workers' Pension Plan*, 3 F.3d 994, 999 (7th Cir. 1993). The arbitrator's legal determinations are reviewed de novo. *Midwest Motor Express,* 181 F.3d at 805.

## ANALYSIS

The Pension Fund first challenges the arbitrator's decision to excuse Congress Plaza's withdrawal liability based on the labor dispute exception codified in 29 U.S.C. § 1398. According to the Pension Fund, the United States Congress intended to allow parties to contract around statutory provisions in their agreements and to waive statutory protections, and Congress Plaza contracted to limit the statutory protection accorded to it by the labor dispute exception

5

when it agreed to be bound by the "One-Year Resolution" in § 9.04. To support this position, the Pension Fund relies on only the comments made by United States Representative Thompson regarding the MPPAA before it was passed by the House of Representatives in 1980. *See* A & P 126 Cong. Record H7863, H7899 (Aug. 26, 1980). Representative Thompson stated that "the statutory imposition of withdrawal liability is not intended to restrict the parties's freedom to agree to additional or supplemental measures to protect a plan from the consequences of an employer's withdrawal. . . . Of course, employers can also agree by contract to waive limitations on their statutory withdrawal liability." *Id.* The Pension Fund does not cite to any statutory language that incorporates Congressman Thompson's interpretation of the MPPAA.

Trust agreements for multiemployer pension plans must be construed in light of ERISA's policies. *Cent. States, SE and SW Areas Pension Funds v. Cent. Transport, Inc.*, 472 U.S. 559, 568 (1985). When interpreting Congress's intent in passing this legislation, courts first look to the statutory language. *Blum v. Stenson*, 465 U.S. 886, 896 (1985); *see United States v. Lange*, 312 F.3d 263, 271 (7th Cir. 2002). Legislative history, such as Congressman Thompson's remarks, may be consulted to determine "the political branches' imprimatur," where the statute could be read in several ways. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). "But when the legislative history stands by itself, as a naked expression of 'intent' unconnected to any enacted text, it has no more force than an opinion of a poll of legislators . . ." *Id.* at 448.

Whether the United States Congress intended in the MPPAA to allow employers waive statutory protections such as the labor dispute exception is a close question. The United States Congress specifically carved out a small number of exceptions to the imposition of withdrawal

liability without mention that these statutory protections could be waived. *See Schlitz*, 3 F.3d at 1000 ("Withdrawal liability depends on the MPPAA, not on the parties' agreement . . ."). The Pension Fund's reliance on the statements of Congressman Thompson, "unconnected to any enacted text," alone cannot impose the right to waive limitations on statutory withdrawal. *See Brill*, 427 F.3d at 448. Yet, no language in the MPAA explicitly forbids the parties from taking this action.

This court, however, need not decide whether the United States Congress generally intended to allow employers to waive these statutory limitations protections because the arbitrator reasonably rejected the Pension Fund's assertion that the "One-Year Resolution" was a waiver of the labor dispute exception. The "One-Year Resolution" states that the employer's obligation to contribute shall continue until the end of the 12th month following the expiration of a collective bargaining agreement. This language does not refer to a labor dispute or § 1398, which excepts from withdrawal liability employers who suspend contributions solely based on a labor dispute. Moreover, rejecting the Pension Fund's interpretation of §9.04 as a waiver of the labor dispute exception does not strip the provision of effect. According to the record before the arbitrator, the trustees in their discretion have applied this provision in the past to employers whose collective bargaining agreements have permanently expired, e.g., those employers who have permanently ceased operations. The trust agreement also states that the trustees will perform their duties consistent with ERISA, the MPPAA, and other relevant statutes. In light of this provision and the application of the "One-Year Resolution" to circumstances other than labor disputes, the arbitrator reasonably concluded that the labor dispute exception was still applicable to this circumstance.

To the extent that the Pension Fund argues that the labor dispute exception does not apply because Congress Plaza did not suspend its contributions "solely" based on the labor dispute, but rather because the Pension Fund rejected its contributions, this argument appears to split hairs. There is no dispute that there was and continues to be a labor dispute between Congress Plaza and Local 1. The Pension Fund refused to accept contributions from Congress Plaza because Congress Plaza and Local 1 failed to negotiate a renewed CBA for longer than a year based on this labor dispute. Thus, Congress Plaza suspended its contributions solely based on the labor dispute and falls within § 1398's exception.

In any event, even if the United States Congress intended to allow employers to waive the labor dispute exception and the trust agreement contained such a waiver, the arbitrator properly concluded that Congress Plaza's withdrawal could not reasonably be characterized as permanent. The Pension relies solely on the language of the "One-Year Resolution" to argue that the withdrawal was permanent (and correctly notes that courts have upheld withdrawal liability even where withdrawals were involuntary based on a pension fund's rejection of contributions). But the "One-Year Resolution" does not explicitly designate that a withdrawal is construed as permanent. Furthermore, there is no evidence before the arbitrator that Congress Plaza intended any withdrawal due to the labor dispute as permanent. As the arbitrator found, Congress Plaza would not have stopped paying its contributions to the Pension Fund absent the Pension Fund's rejection of future contributions and notice of withdrawal liability. Additionally, Congress Plaza had not shut down any covered operations. The possibility of "resumed participation by the employer in the pension fund" remained an option. (Arbitrator's Decision, Pl. Ex. 1 at paginated 20.) Finally, that Congress Plaza did not seek an extension as permitted

8

under the "One-Year Resolution" and arrange to pay the higher contribution rate for the following year does not aid the Pension Fund's argument that the withdrawal was permanent. It was the Pension Fund that initiated the termination of contributions at exactly the 12-month mark and sent a notice of withdrawal liability two weeks later to Congress Plaza. The Pension Fund was within its discretionary authority when it quickly acted to reject future contributions. But the Pension Fund cannot rely on Congress Plaza's failure to take peremptory action to prove that Congress Plaza intended its withdrawal to be permanent, especially given the Pension Fund's past leniency in enforcing the "One-Year Resolution" against other employers.

## CONCLUSION

Accordingly, this court affirms the arbitrator's decision. The defendant's motion for summary judgment is granted (Dkt. No. 24), and the plaintiffs' motion for summary judgment is denied (Dkt. No. 30). Judgment in entered in favor of the defendant and against the plaintiffs. Congress Plaza is the prevailing party, and so this court grants its request for attorneys' fees and costs, *see* 29 U.S.C. § 1451(e). A party required to defend an arbitrator's award in court and prevails is presumptively entitled to attorneys' fees and costs under § 1451(e). *See Cent. States, SE and SW Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 444 (7th Cir. 2000). In an effort to rebut that presumption, the Pension Fund incorrectly cites to the standard of "bad-faith" or "dilatory, harassing or improper conduct" for the awarding attorneys' fees by an arbitrator, *see* 29 C.F.R. § 4221.10, not the "prevailing party" standard applicable to the courts. Although this court does not believe that the Pension Fund appealed in bad faith, that alone is not enough to rebut the presumption that the prevailing party is entitled to fees and costs when forced to defend the arbitrator's award in district court. The parties are urged to resolve the

question of attorneys' fees and costs. If that question is not resolved by agreement, then Congress Plaza may file no later than February 13, 2006, a motion and accompanying affidavits with the court specifically identifying and calculating any attorneys' fees and costs that it may have incurred in litigating this case before the district court. The Pension Fund should file its objections, if any, to the calculations of attorneys' and costs no later than February 28, 2006.

ENTER

_____
JAMES F. HOLDERMAN
United States District Judge

DATE: January 27, 2006